ARTHUR Y. DALZIEL, as Trustee of LOUIS TAUB, Bankrupt, Plaintiff,
   *v.* OREGON-WASHINGTON RAILROAD AND NAVIGATION COMPANY,
   Defendant, Impleaded with ERIE RAILROAD COMPANY, Defendant.

STATE BANK, Plaintiff, *v.* OREGON-WASHINGTON RAILROAD AND
   NAVIGATION COMPANY, Defendant, Impleaded with ERIE RAIL-
   ROAD COMPANY, Defendant.

First Department, February 4, 1927.

**Carriers — carriers of freight — action against initial carrier for damage
to goods in transit — damage was caused in part by connecting deliver-
ing carrier — under Carmack Amendment, Interstate Commerce Act,
§ 20, subds. 11, 12, initial carrier may set off indebtedness due from
shipper to connecting delivering carrier.**

In an action against an initial carrier to recover damages to goods in transit
   brought under subdivisions 11 and 12 of section 20 of the Interstate Commerce
   Act, known as the Carmack Amendment, in which it appears that the damage
   was caused in part by the connecting delivering carrier, the initial carrier may
   interpose as a setoff an indebtedness due from the shipper to the connecting
   delivering carrier, and no judgment will be rendered against the connecting
   delivering carrier, since the indebtedness is larger than the amount of damage
   caused by it.

SUBMISSIONS of controversy upon separate agreed statements of
facts pursuant to section 546 of the Civil Practice Act.

*David Haar* of counsel [*David Haar* and *Max Silverstein*, attor-
neys], for the plaintiff.

*Theodore Kiendl* of counsel [*Frederic W. Girdner* with him on
the brief; *Davis, Polk, Wardwell, Gardiner & Reed*, attorneys],
for the defendant.

McAvoy, J. These cases submit the controversy whether or
not an initial railroad carrier may interpose an offset which belongs
to the delivering connecting carrier against a claim by a shipper
which arises under the Carmack Amendment of the Interstate
Commerce Act in his favor against the initial carrier. Both cases
are identical in their facts, excepting that one claim belongs to
the plaintiff trustee in bankruptcy coming to him through the
bankruptcy of the shipper and the other belongs to the plaintiff
bank by assignment by the same shipper, of his other rights therein.

The defendant Oregon-Washington Railroad and Navigation
Company is the initial carrier and in the State Bank's case's sub-
mission, it is stated there was delivered to it for shipment a carload
of apples. Bills of lading for these apples were delivered by the
initial carrier and they contained the usual recitals and obligations
of such a document. The impleaded defendant, the Erie Railroad

Company, was the delivering connecting carrier by which the car of apples was received and delivered at its destination in New York city. The apples were shipped originally to Denver, and while in transit the destination was changed to New York city, and an exchange bill of lading issued. The shipment, however, was continuous from Yakima, Wash., to New York city. The bankrupt Taub became the owner of the apples and of all of the rights of the original shipper in respect thereof under the bills of lading. On arrival at destination the apples were found to have been damaged in transit, to an amount stipulated at $283.50, of which amount the submission agrees the sum of $150 represents the damage caused to the shipment by the act or neglect of the Erie Railroad Company and the Erie Railroad Company stipulates that it would be liable to pay this sum except for an alleged " defense, set-off or counterclaim " which arises out of the fact that Taub, the assignor and bankrupt, prior to the assignment of the claim to the plaintiff, was indebted to the Erie Railroad Company in an amount in excess of $12,000 under contracts of affreightment and transportation, no part of which has been received by the Erie Railroad Company.

The action proceeds against the initial carrier, the Oregon-Washington Railroad and Navigation Company, to recover the entire amount of damages under the provisions of the Carmack Amendment of the Interstate Commerce Act, which imposes in the first instance on an initial carrier when it issues a through interstate bill of lading liability for all the damages, irrespective of the number of lines on which the damages are brought about.

The defendant Oregon-Washington Railroad and Navigation Company has impleaded the Erie Railroad Company so that it may obtain a judgment against the Erie Railroad Company in the sum of $150 in the event that the Oregon-Washington Railroad and Navigation Company as initial carrier is unable to offset the indebtedness, or that part thereof due from the Erie Railroad Company, out of the sum which is owed by the plaintiff's assignor to the Erie Railroad Company which sum is greatly in excess of the damage claimed.

The Erie Railroad Company consents that this offset should be allowed in favor of the initial carrier but concedes that, if disallowed, the initial carrier is entitled to a judgment against it for the loss occasioned on its line for $150. The railroads have no controversy here; each contends that proper judgment is one in favor of the plaintiff against the defendant Oregon-Washington Railroad and Navigation Company in the sum of $133.50, which amount results from reducing the amount sued for, $283.50, by

the $150 which represent the setoff which the defendants claim should be allowed. In that event no money judgment would be rendered against the Erie Railroad Company, but only the remainder amount would be awarded against the Oregon-Washington Railroad and Navigation Company.

The plaintiff's contention in this submission is that it is entitled to a judgment for the full sum of $283.50 against the initial carrier, the Oregon-Washington Railroad and Navigation Company, and that offset is not warranted in law.

The sum involved in the Dalziel case is stipulated at $48.98, of which amount the sum of $3.93 represents the amount of damage caused to the shipment on the lines of the Erie Railroad Company, which that company would be liable to pay unless the " defense, set-off or counterclaim " herein may be allowed.

We think that while the Carmack Amendment does not in terms permit a setoff of this character by the initial carrier, judgment in each case should be rendered for the difference between the amount of the full claim and the sum which the Erie Railroad Company concededly owes to the plaintiff, and that the Erie Railroad Company is relieved of its secondary liability to the Oregon-Washington Company through this setoff.

When the shipments herein were made and the bills of lading issued in January and February, 1922, and when the claims herein subsequently arose, the Carmack Amendment to the Hepburn Bill amending the Interstate Commerce Act, after having been in part superseded and amended by the First and Second Cummins Amendments, had, by the Transportation Act of 1920, become subdivisions 11 and 12 of section 20 of the Interstate Commerce Act. The amended statute reads as follows:

" (11) That any common carrier * * * receiving property for transportation * * * shall issue a * * * bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier * * * to which such property may be delivered or over whose line or lines such property may pass * * *: Provided further, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law. * * *.

" (12) That the common carrier * * * issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or

transcript thereof." (See 34 U. S. Stat. at Large, 593, 595, § 7, amdg. 24 id. 386, § 20, as amd. by 38 id. 1196, 1197, chap. 176; 39 id. 441, 442, chap. 301, and 41 id. 494, §§ 436–438. See, also, United States Code, tit. 49, § 20, subds. 11, 12.)

The effect of the Carmack Amendment is to impose the entire liability for the loss to an interstate commerce shipment upon the initial carrier which issued the bill of lading for the shipment, irrespective of whether it caused the damage or such damage was caused on a connecting line and irrespective of any provision in the bill of lading limiting the liability of the initial carrier, since such provisions have been declared to be inoperative. The amendment further permits the initial carrier to secure reimbursement after paying any claim or judgment by such legal proceedings as it may bring against a connecting carrier responsible in whole or in part for the loss for which the initial carrier is made accountable. By the amendment the initial carrier may recover in full from the connecting carriers causing the damage when it is not itself at any fault, any amount which it pays to the shipper, and thus sustains no loss by reason of the wrongful acts of the other carriers which actually caused the damage.

An initial carrier may interpose against a shipper or his assigns any facts or circumstances which would have sufficed to defeat a claim against the connecting carriers from their alleged liabilities had such carriers been sued directly by the shipper in an action at common law. This is the rule announced in *Riverside Mills* v. *Atlantic Coast Line R. Co.* (168 Fed. 987; affd., *sub nom. Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186). The pertinent holding reads: " He [the initial carrier] can make any proper defense, which may be made in a court of law, and which any other connecting carrier might make, wherever the goods are transported, or wherever the loss or injury occurred. If the loss occurred from the act of God or from the country's enemies * * * or was otherwise capable of defense, this railroad would have the privilege of making such defense here."

Thus it would seem that the legal liability of the initial carrier is the same as that of the connecting carrier and subject to diminution or defeat by any facts and circumstances or legal rules which would be available to the connecting carrier actually responsible for the damage. While equitable setoff is not given as a defense in the Carmack Amendment, principles of equity quite apposite to the situation of the parties allow it.

It is said in the submission that Taub is insolvent. This is one of equity's reasons for allowing a setoff where the principal is called upon to pay a surety's debt to an insolvent creditor. If

Taub or his assignees are allowed to enforce this claim by judgment, the defendants will be in the position of being compe led to pay the judgment in their several liabilities, although Taub is indebted to one of them in an amount in excess of the judgment to be rendered in his favor. Thus the plaintiff will recover damages which the Erie Railroad Company wil be compelled to pay the Oregon-Washington Railroad and Navigation Company, although the plaintiff's assignor owed the Erie Railroad Company moneys in excess of its claim. Equity will usually furnish relief by way of an equitable setoff in such instances and will regard the initial carrier here as a surety who pays his principal's debt to an insolvent creditor.

We think, therefore, that in both cases the Erie Railroad Company's contract claim against the plaintiff's assignor is a defense *pro tanto* to the claims of the plaintiff against the defendant the initial carrier, and thus operates to relieve the impleaded defendant, the Erie Railroad Company, of any and all liability to the initial carrier or otherwise. Judgments should be rendered as follows:

In Dalziel, as trustee, against the defendant Oregon-Washington Railroad and Navigation Company in the sum of forty-five dollars and five cents, deducting the three dollars and ninety-three cents which would otherwise be due by the Erie Railroad Company except for the setoff.

In the State Bank case, in favor of the plaintiff and against the defendant Oregon-Washington Railroad and Navigation Company in the sum of $133.50, deducting the sum of $150, which otherwise would be owing by the Erie Railroad Company. In both cases no judgment should be rendered against the Erie Railroad Company.

DOWLING, P. J., MERRELL, FINCH and PROSKAUER, JJ., concur.

Judgments directed as indicated in opinion. Settle orders on notice.